**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

---

Keith W. Oswald,                                            Civ. No. 15-4289 (BRT)

      Plaintiff,

v.                                                                      **MEMORANDUM
                                                                        OPINION AND ORDER**

Carolyn W. Colvin,
Acting Commissioner of
Social Security,

      Defendant.

---

Karl E. Osterhout, Esq., Osterhout Disability Law, LLC, and Edward C. Olson, Esq., Attorney at Law, counsel for Plaintiff.

Gregory G. Brooker, Esq., United States Attorney's Office, counsel for Defendant.

---

BECKY R. THORSON, United States Magistrate Judge.

      Keith W. Oswald seeks judicial review of the Commissioner of Social Security's final decision denying his application for disability insurance benefits. 42 U.S.C. § 405(g). This matter is before the Court on the parties' cross-motions for summary judgment. D. Minn. LR 7.2(c)(1). For the reasons stated below, the Court concludes the Administrative Law Judge's decision is supported by substantial evidence in the record. Therefore, Plaintiff's Motion for Summary Judgment is denied and Defendant's Motion for Summary Judgment is granted.

## BACKGROUND

**I.     Procedural History**

Plaintiff, Keith W. Oswald, filed a Title II application for Disability Insurance Benefits ("DIB") and a Title XVI application for Supplemental Security Income ("SSI") on September 20, 2011, alleging a disability onset date of June 1, 2010. (Tr. 181, 187.)[1] Plaintiff's claims were denied initially on April 13, 2012, and upon reconsideration on November 9, 2012. (Tr. 97, 112.) Plaintiff requested a hearing, which was held on February 26, 2014. (Tr. 39.) The Administrative Law Judge ("ALJ") issued a decision denying Plaintiff's claims on July 18, 2014. (Tr. 11–33.) On October 7, 2014, the Appeals Council denied review, making the ALJ's July 18, 2014 decision the final decision of the Commissioner. (Tr. 1–6); *see* 20 C.F.R. §§ 404.981, 416.1481.

On December 3, 2015, Plaintiff timely filed this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner. (Doc. No. 1.) The parties filed cross-motions for summary judgment pursuant to D. Minn. LR 7.2(c). (Doc. Nos. 16, 18.) Plaintiff argues that the ALJ erred by discounting the opinions of an examining consultative psychologist and a non-examining state agency psychologist. (Doc. No. 17, Def.'s Mem. 4–19.) Defendant asks the Court to affirm the Commissioner's decision because the ALJ properly addressed those opinions, and the denial of benefits is supported by substantial evidence. (Doc. No. 19, Def.'s Mem. 7–13.)

---

[1]     Throughout this Order and Opinion, the abbreviation "Tr." is used to reference the Administrative Record (Doc. No. 13).

## II.     General Background

Plaintiff was forty-three years old on June 1, 2010, his alleged onset date. (Tr. 410.) He graduated from high school and was in the United States Army from 1985 until 1989, stationed at Fort Bragg in North Carolina. (Tr. 213, 406.) While in the Army, he completed a metal working course, and then received a general discharge. (Tr. 214, 406.) He worked as a carpet installer from 1985 to 2008; a small engine mechanic/repairman from 1985 to 2010; and a welder/assembler from 2005 to 2007. (Tr. 214, 232.) Plaintiff also worked intermittently as a cook. (*Id.*) Plaintiff's last job was as a part-time stir fry cook at a Chinese restaurant. (Tr. 302.) He left that job due to an anxiety attack in October 2013. (Tr. 44, 61.) Since September 2011, Plaintiff has lived in an apartment in Hibbing, Minnesota. (Tr. 43.)

## III.    The ALJ's Findings and Decision

In his decision dated July 18, 2014, the ALJ found that Plaintiff was not disabled as defined by the Social Security Act and denied Plaintiff's application for DIB and SSI. (Tr. 33.) The ALJ proceeded through the five-step evaluation process provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)(4). These steps are as follows: (1) whether the claimant is presently engaged in "substantial gainful activity"; (2) whether the claimant is severely impaired; (3) whether the impairment meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform other jobs available in sufficient numbers in the national economy. *Id.* § 404.1520(a)–(f).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 1, 2010, the alleged onset date. (Tr. 13.) At step two, the ALJ found that Plaintiff has the following severe impairments: spine impairment with radiculopathy status post 2010 fusion; degenerative joint disease; right shoulder impairment; residual pain status post bilateral knee surgeries; chronic pain syndrome; vertigo; affective mood disorder; anxiety disorders; somatic dysfunction; attention deficit hyperactivity disorder; and a history of alcohol abuse. (*Id.*) The ALJ concluded that the following impairments or conditions were non-severe: carpal tunnel syndrome; bilateral arm numbness; right epicondylitis (tennis elbow); obesity; smoking; right finger soft tissue injury; shingles; sinus bradycardia; hypertension; and headaches. (Tr. 13–15.) The ALJ reasoned that these impairments "were not shown to result in more than minimal interference with [Plaintiff's] ability to perform work-related activity." (Tr. 14.) The ALJ also noted that a state examiner considered the autism listing, but the evidence "failed to establish autism as a medically determinable impairment." (Tr. 15.)

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § Part 404, Subpart P, Appendix 1. (Tr. 15.) The ALJ considered listings for physical and mental impairments. (Tr. 15–18.)

Before reaching step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform "light work as defined in 20 CFR 404.1567(b) and 416.967(b)." (Tr. 18.) The ALJ also included the following limitations in Plaintiff's RFC: can never climb ladders, ropes, or scaffolds; can only occasionally climb stairs and

ramps; can occasionally stoop, kneel, crouch, crawl, and engage in activities requiring balance; can occasionally engage in overhead reaching bilaterally; should avoid all exposure to operational controls of moving machinery and unprotected heights; limited to simple, routine, and repetitive tasks; limited to work in a low-stress environment defined as requiring only occasional decision-making and only occasional changes in work setting; and limited to only occasional, brief, and superficial interaction with the public and co-workers. (Tr. 18.) The ALJ made these findings after considering Plaintiff's symptoms, objective medical evidence, and opinion evidence. (*Id.*) According to the ALJ, his RFC assessment "was supported by [Plaintiff's] admitted activities of daily living, the underlying treatment record, and by the state examiners' opinions, all of which suggested some degree of impairment but not to the degree alleged." (Tr. 31.) The ALJ addressed Plaintiff's allegations of disabling limitations, such as balance issues, panic attacks brought on by stress, struggles with lifting, and difficulty reaching overhead. (Tr. 19.) Ultimately, the ALJ concluded that Plaintiff's "alleged limitations were not fully persuasive" and he "retained the capacity to perform work activities" within the limitations set forth in the RFC. (*Id.*)

At step four, the ALJ found that Plaintiff has no past relevant work, noting the vocational expert's testimony that all past work was precluded by Plaintiff's RFC. (*Id.*) At step five, the ALJ found, pursuant to the vocational expert's testimony, that Plaintiff could perform jobs that exist in significant numbers in the national economy in light of

5

Plaintiff's age, education, work experience, and RFC.[2] (Tr. 32.) Thus, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. (Tr. 33.)

## DISCUSSION

### I.    Standard of Review

The Commissioner's final determination not to award DIB and SSI following an administrative hearing is subject to judicial review. 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3). The Court has the authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." § 405(g) (sentence four).

"Disability" under the Social Security Act means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

---

[2]    Those jobs were marker (500,000 jobs nationwide), wire harness worker (325,000 jobs nationwide), and garment folder (311,000 jobs nationwide). (Tr. 32.)

The Court "must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006). Substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). On review, the Court considers "both evidence that detracts from and evidence that supports the Commissioner's decision." *Hartfield v. Barnhart*, 384 F.3d 986, 988 (8th Cir. 2004). If it is "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings," the Commissioner's decision must be affirmed. *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). In other words, the denial of benefits will not be disturbed "so long as the ALJ's decision falls within the available zone of choice. An ALJ's decision is not outside the zone of choice simply because [the reviewing court] might have reached a different conclusion had [it] been the initial trier of fact." *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008); *see also Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988) ("The concept of substantial evidence . . . embodies a zone of choice within which the Secretary may grant or deny benefits without being subject to reversal on appeal.").

The claimant bears the burden of proving his or her entitlement to disability benefits under the Social Security Act. *See* 20 C.F.R. § 404.1512(a); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). Once the claimant demonstrates that he or she cannot perform past work due to a disability, "the burden of proof shifts to the Commissioner to prove, first that the claimant retains the residual functional capacity to do other kinds of work, and, second that other work exists in substantial numbers in the

7

national economy that the claimant is able to do." *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000).

## II.    Analysis of the ALJ's Decision

### A.    The ALJ Properly Analyzed the Opinion of Dr. James Huber, the SSA's Examining Psychologist

Plaintiff argues that the ALJ erred by failing to provide good reasons for discounting the opinion of the SSA's examining psychologist, Dr. James Huber. Plaintiff was referred to Dr. Huber for a consultative psychological evaluation on November 5, 2012. (Tr. 405.) Dr. Huber opined that Plaintiff (1) appeared able to understand and follow at least relatively simple instructions with reminders; (2) was moderately impaired in his ability to sustain attention and concentration; (3) was markedly impaired in his ability to carry out work-like tasks with reasonable persistence and pace on a consistent basis; (4) appeared able to respond appropriately to brief and superficial contacts with coworkers and supervisors; and (5) appeared able to tolerate only relatively low levels of stress and pressure in the workplace. (Tr. 409.)

Plaintiff argues, in particular, that more weight should have been given to the third part of Dr. Huber's opinion (i.e., that Plaintiff was markedly impaired in his ability to consistently carry out work-like tasks with reasonable persistence and pace), to which the ALJ gave "little weight." (Tr. 30.) The ALJ observed that Plaintiff's presentation to Dr. Huber conflicted with "other observations throughout the record" because he "repeatedly demonstrated intact memory on subsequent exams" and "demonstrated adequate to good attention and concentration on multiple exams." (*Id.*) The ALJ also noted that Plaintiff

8

was teaching his daughter to cook, which indicated that Plaintiff "could not only remember and comprehend instructions, he could also relay such instructions to others." (*Id.*) Further, the ALJ found the record suggested "possible exaggeration or symptom magnification, which cast doubt on [Plaintiff's] physical presentation throughout the record." (*Id.*) Thus, the ALJ concluded that Dr. Huber's opinion regarding pace, persistence, and a need for reminders was not consistent with the underlying record. (*Id.*)

Plaintiff argues that Dr. Huber's opinion should have been credited, in part, because of his status as an examining source. Generally, it is true that examining source opinions are given "more weight" than opinions from non-examining sources. 20 C.F.R. § 404.1527(c)(1). The examining relationship, however, is only one factor to be used in evaluating medical opinion evidence. The other factors are the length, nature, and extent of the treatment relationship; supportability; consistency "with the record as a whole"; and specialization. *Id.* § 404.1527(c)(2), (c)(3), (c)(4), (c)(5). These factors support the ALJ's evaluation of Dr. Huber's opinion.

First, since Dr. Huber was a consulting source, his opinion is not entitled to controlling weight under the treating physician factor. *Id.* § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of *individual examinations, such as consultative examinations* or brief hospitalizations.") (Emphasis added).

Further, the ALJ's conclusion that Dr. Huber's opinion was not consistent with the record is supported by substantial evidence. For example, the ALJ noted that Plaintiff "repeatedly demonstrated intact memory on subsequent exams" and "demonstrated adequate to good attention and concentration on multiple exams." (Tr. 30.) The ALJ's record citations confirm that his analysis was correct. (Tr. 502 (indicating intact memory on November 8, 2012); Tr. 553 (stating the following on April 3, 2013: "Recent and remote memory intact. Good attention span. Concentration appears adequate for interview"); Tr. 567 (stating the following on December 3, 2013: "Recent and remote memory both intact. Attention and concentration both good").) Additionally, on April 5, 2012, Dr. Roger Ralston, M.D., a consulting/examining physician, documented a normal mental status for Plaintiff (Tr. 382.) Dr. Ralston specifically noted that Plaintiff "focuses his attention and is able to shift from subject to subject without difficulty." (*Id.*)

Furthermore, on November 7, 2012, Dr. Vivian Pearlman, a state agency psychologist, explicitly rejected Dr. Huber's diagnoses and report. (Tr. 85.) According to Dr. Pearlman, Dr. Huber's opinion regarding impaired persistence and pace was in excess of Plaintiff's reports regarding his functions and activities of daily living and was not supported by the medical evidence of record or current level of care. (Tr. 85.) The ALJ afforded "significant weight" to Dr. Pearlman's opinion, which noted "mild impairment in activities of daily living and moderate deficits in social functioning and concentration, persistence or pace, . . . ." (Tr. 27.) State agency psychologists, such as Dr. Pearlman, are considered to be "highly qualified . . . experts in Social Security disability evaluation." § 404.1527(e)(2)(i).

### B. Dr. Pearlman's Opinion Does Not Support a Limitation to 3–4 Step Tasks, and the ALJ's Failure to Include a 3–4 Step Limitation in the RFC was Harmless

Plaintiff argues that the ALJ erred when he gave Dr. Pearlman's opinion dispositive weight, but then, implicitly and without explanation, rejected Dr. Pearlman's limitation to the performance of routine, repetitive, 3–4 step tasks. (Tr. 83.) This limitation was not included in the ALJ's RFC. Dr. Pearlman, however, did not actually limit Plaintiff to the performance of 3–4 step tasks. Instead, Dr. Pearlman opined that Plaintiff's "ability to handle stress and pressure in the work place would be reduced, but *adequate* to handle the stresses of a routine, repetitive, or 3–4 step work setting. It would be moderately impaired for the stresses of a detailed or complex/technical work setting. Avoid frequent or rapid changes." (Tr. 84) (emphasis added). This opinion is consistent with the ALJ's RFC and supported by substantial evidence in the record.

Moreover, the jobs that the vocational expert stated Plaintiff could perform—marker (*Dictionary of Occupational Titles* (4th ed. 1991 ) ("DOT") 209.587-034), wire harness worker (DOT 728.684-010), and garment folder (DOT 789.687-066)—do not, as Plaintiff argues, require the performance of tasks involving more than 3–4 steps. The job tasks of a marker, for example, are as follows:

> Marks and attaches price tickets to articles of merchandise to record price and identifying information: Marks selling price by hand on boxes containing merchandise, or on price tickets. Ties, glues, sews, or staples price ticket to each article. Presses lever or plunger of mechanism that pins, pastes, ties, or staples ticket to article. May record number and types of articles marked and pack them in boxes. May compare printed price tickets with entries on purchase order to verify accuracy and notify supervisor of discrepancies. May print information on tickets, using ticket-printing machine.

DOT 209.587-034. Plaintiff characterizes each duty as a separate step towards a single task, but this is incorrect. Instead, each duty is a separate task involving only one or two steps. For example, "[m]arks and attaches price tickets to articles of merchandise to record price and identifying information" requires two steps; "[m]arks selling price by hand on boxes containing merchandise, or on price tickets" requires one step; and "[m]ay record number and types of articles marked and pack them in boxes" requires two steps. *Id.* Similarly, a wire harness assembler "[r]eads instructions, such as work orders, diagrams, and wire lists to determine materials needed and sequence of assembly" (one step), "[s]elects wires of specified color, marking, or length, and loops wires between guide pegs on harness board, following color-coded lines or sequential numbers on board or diagram" (two steps), and "[w]raps and ties wires together at designated points to form harness, manually or using tie-wrap gun" (two steps), among other duties. DOT 728.684-010. And a garment folder "[f]olds garments for bagging or boxing, following guide marks on table or using folding board (cardboard or metal form)" (one step) and "[s]ecures folds with metal clips" (one step). DOT 789.687-066. Ultimately, these three jobs are unskilled work, consistent with Dr. Pearlman's opinion that Plaintiff "can understand, remember, and carry-out unskilled to semi-skilled tasks." (Tr. 85.)

### C. Conclusion

In sum, there is substantial evidence in the record as a whole to support the ALJ's findings. The ALJ did not err by refusing to give significant weight to Dr. Huber's opinion that Plaintiff was markedly impaired in his ability to work with reasonable

persistence and pace. The ALJ also did not err in his reliance on Dr. Pearlman's opinion. Dr. Pearlman, as noted, did not limit Plaintiff to the performance of 3–4 step tasks. Even if she did, the duties for the jobs identified by the vocational expert do not exceed 3–4 steps. Therefore, the ALJ's decision that Plaintiff is not disabled was within his "zone of choice." *See Bradley*, 528 F.3d at 1115; *Bland*, 861 F.2d at 535.

## ORDER

Based on the foregoing, and all the files, records, and submissions herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 16) is **DENIED**;

2. Defendant's Motion for Summary Judgment (Doc. No. 18) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: February 15, 2017.                             *s/ Becky R. Thorson*_____
                                                     BECKY R. THORSON
                                                     United States Magistrate Judge